UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KAREN W DOWNING Individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>     v.<br><br>SMC CORPORATION OF AMERICA,<br><br>     Defendant. | )<br>)<br>)<br>)<br>)<br>) No. 1:20-cv-01954-JPH-MJD<br>)<br>)<br>)<br>)<br>) |

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Karen Downing alleges that her employer, SMC Corporation, failed to pay her and other employees weekly overtime in violation of the Fair Labor Standards Act ("FLSA") and Indiana's wage laws. The parties have filed cross-motions for partial summary judgment. Dkt. 109; dkt. 119. For the reasons below, SMC is entitled to summary judgment on Ms. Downing's state-law claims, but there are triable issues of fact on her FLSA claim. SMC's motion is therefore **GRANTED in part and DENIED in part**, dkt. [109], and Ms. Downing's motion is **DENIED**, dkt. [119].

**I.
Facts and Background**

The parties have filed cross-motions for summary judgment, so the Court takes the motions "one at a time." *American Family Mut. Ins. v. Williams*, 832 F.3d 645, 648 (7th Cir. 2016). For each motion, the Court views and recites the evidence and draws all reasonable inferences "in favor of the non-moving party." *Id.*

1

SMC manufactures and sells pneumatic components for automated systems. Dkt. 108-2 at 2 (Nguyen Dep. at 12). Ms. Downing started working for SMC in December 2007 as a Business Analyst II. Dkt. 120-1; dkt. 121-26 at 2 (Downing Dep. at 12). She worked in that role until February 2017, when she became an associate in the Inside Sales Support department. Dkt. 121-26 at 3–4 (Downing Dep. at 39–40).

In that department, Ms. Downing was initially paid as an "hourly nonexempt" employee, meaning she would receive overtime pay for hours worked in excess of 40 hours per week. *Id.* at 3–4, 19 (Downing Dep. at 39–40, 160). In late March 2018, SMC reclassified Inside Sales Support employees from "hourly nonexempt" to "salary nonexempt," which still allowed overtime pay. Dkt. 120-2. But SMC "expected . . . a 42 hour work week" and defined overtime as "anything over 42 hours in a week." *Id.*; dkt. 121-28 at 2 (Georgen Dep. at 32). That policy continued until November 2019, when SMC reclassified Inside Sales Support employees back to "hourly nonexempt" and returned to paying overtime for hours worked in excess of 40 hours per week. Dkt. 121-20 at 2–3.

Ms. Downing brought this action in July 2020, alleging that SMC violated the FLSA, Indiana Minimum Wage Law ("IMWL"), and Indiana Wage Payment Statute ("IWPS") by failing to pay overtime to certain employees who had worked in excess of 40 hours in a week. Dkt. 1 at 7–9. The Court has conditionally certified a FLSA collective-action class, dkt. 56, and Ms. Downing has filed eleven "Consent to Representation" forms, dkt. 106. SMC has filed a

motion to strike those forms, arguing that they are untimely. Dkt. 113. Ms. Downing has filed a motion to certify a class for her state-law claims under Federal Rule of Civil Procedure 23. Dkt. 107.

The parties have also filed cross-motions for partial summary judgment. SMC argues that Ms. Downing's state-law claims fail as a matter of law and that her FLSA claim cannot support liquidated damages. Dkt. 109. Ms. Downing argues that the undisputed evidence shows that SMC violated the FLSA. Dkt. 119.

## II.
## Applicable Law

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324.

In ruling on cross motions for summary judgment, the Court takes the motions "one at a time," viewing and reciting the evidence and drawing all reasonable inferences "in favor of the non-moving party." *Williams*, 832 F.3d at 648.

# III.
# Analysis

## A. The Fair Labor Standards Act Claim

### 1. Collective Action

Ms. Downing alleges that SMC violated the FLSA by failing to pay her and "similarly situated employees for all hours worked in excess of 40 hours in a work week." Dkt. 1 at 7. "The Fair Labor Standards Act authorizes a worker to sue a noncompliant employer on 'behalf of [her]self or themselves and other employees similarly situated.'" *Smith v. Professional Transp., Inc.*, 5 F.4th 700, 702 (7th Cir. 2021) (quoting 29 U.S.C. § 216(b)). In July 2021, the Court conditionally certified a FLSA collective-action class. Dkt. 56. In a FLSA collective action (unlike a class action under Federal Rule of Civil Procedure 23) class members must "affirmatively . . . opt into the action by giving their consent in writing to become such a party." *Smith*, 5 F.4th at 702 (quoting 29 U.S.C. § 216(b)). While each plaintiff's written consent must be "filed in . . . court," 29 U.S.C. § 216(b), the statute does not set a deadline for that filing.

Here, eleven additional plaintiffs executed consent to representation forms between September and December 2021. Dkt. 106. Counsel filed those forms on March 25, 2022. *Id.* SMC has filed a motion to strike them as untimely filed. Dkt. 113. Ms. Downing responds that their filing in March 2022 did not violate any deadlines. Dkt. 125.

SMC has not identified any Court-imposed deadline for filing the consent forms. *See* dkt. 113. Instead, class members were required to submit their

4

consents to Ms. Downing's counsel by December 18, 2021.  Dkt. 130; *see* dkt. 86.  The order setting that deadline did not mention the filing of the consent forms with the Court.  *See* dkt. 130; dkt. 113 at 2–3.

Perhaps because there was no filing deadline, counsel accuse each other of "gamesmanship" with respect to the filing of the consent forms.  Dkt. 113 at 4; dkt. 125 at 3.  According to SMC, Ms. Downing's counsel strategically held off on filing the consent forms until the last minute to "prevent[ ] SMC from a full and fair opportunity to research and present arguments on summary judgment in relation to the opt-in plaintiffs." Dkt. 113 at 4.  Ms. Downing's counsel counters that SMC's counsel knew about the opt-in plaintiffs as early as December 20, 2021, but took no action so that they could later accuse Ms. Downing's counsel of failing to timely file the consent forms.  Dkt. 125 at 3.

Putting those allegations aside and forgoing speculation about why Ms. Downing's counsel didn't file the consent forms earlier, the Court concludes that the filing did not violate any deadline.  *See* dkt. 113.  Moreover, SMC has not shown that it was unfairly prejudiced from the delay between when the party plaintiffs' consent forms were signed and when they were filed.  SMC argues that it did not have "a full and fair opportunity to take the depositions of these proposed opt-in plaintiffs," dkt. 113 at 5, and that it was unable to raise defenses at summary judgment that may have been available as to the opt-in plaintiffs, dkt. 129 at 3[1].  SMC does not dispute, however, that it knew

---

[1] SMC argues—in a single sentence in its motion to strike and reply in support of summary judgment—that the consents were filed "well outside the presumptive two-year statute of limitations for any such claims."  Dkt. 113 at 6; dkt. 133 at 18.  That

5

by December 20, 2021, that there were eleven opt-ins. Dkt. 125 at 3; dkt. 129. SMC thus could have requested the consents from Ms. Downing's counsel or filed a motion for the Court to set a filing deadline. Instead, SMC's counsel did nothing until after Ms. Downing's counsel filed the consents, only then moving to strike them.

Ms. Downing's counsel did not violate any Court-imposed deadline by filing the consent forms on March 25, 2022, so SMC's motion to strike the consents as untimely is **DENIED**. Dkt. [113].

### 2. Liability

"Under the FLSA, employees are entitled to overtime pay (i.e. one and one-half times the regular rate) for any hours worked in excess of forty hours per week, unless they come within one of the various exemptions set forth in the Act." *Schaefer–LaRose v. Eli Lilly & Co.*, 679 F.3d 560, 572 (7th Cir. 2012) (citing 29 U.S.C. §§ 207, 213). Here, the Inside Sales Support employees were nonexempt, so they were entitled to overtime for hours worked in excess of forty hours per week. *See* dkt. 108-2 at 5 (Nguyen Dep. at 24–25).

Ms. Downing argues that class members are entitled to summary judgment on FLSA liability because SMC paid them for only 40 hours per week. Dkt. 123 at 20–22. She therefore contends that SMC owes the class members "time and a half" for hours between 40 and 42. Dkt. 137 at 12–13. SMC argues that it paid class members their base hourly wage for 42 hours of work

---

argument is too late and too underdeveloped to consider on these briefs. *Carroll v. Lynch*, 698 F.3d 561, 564 n.2 (7th Cir. 2012).

each week, but concedes that it did not pay the "half-time premium" on the extra two hours worked per week. Dkt. 133 at 2 n.1, 19–20.

"[A]n employee who brings suit pursuant to FLSA has the burden of proving that he performed work for which he was not properly compensated." *Melton v. Tippecanoe County*, 838 F.3d 814, 818 (7th Cir. 2016). Here, Ms. Downing has designated evidence that she was paid for "80.00" hours at a "regular" hourly rate—evidence that the "regular" rate reflects a 40-hour workweek. *See, e.g.*, dkt. 120-15 (pay stubs). She has also designated evidence showing that when she worked more than 42 hours in a week, she was paid at one and a half times that "regular" rate for hours worked in excess of 42 hours (a formula of "regular rate" multiplied by 1.5). *See id.*[2] Ms. Downing has therefore designated evidence that SMC paid overtime for those hours based on a 40-hour week instead of a 42-hour week (which would call for a formula of "regular rate" multiplied by 40, divided by 42, and multiplied by 1.5). *Cf. Schaefer–LaRose*, 679 F.3d at 572. Moreover, Ms. Downing testified that she did not recall being told that her weekly pay "was intended to cover 42 hours" and that she "felt like [she] was giving the company 2 hours a week which was . . . [n]ot being compensated." Dkt. 108-1 at 8–9 (Downing Dep. at 77, 81). From that evidence, a reasonable jury could infer that class members were not paid for hours between 40 and 42. *See Melton*, 838 F.3d at 818.

---

[2] This arrangement was typical for pay stubs of Inside Sales Service employees. *See* dkt. 108-3 at 11 (30(b)(6) Dep. at 129).

7

"[T]he burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Id.* SMC has designated evidence that it intended for the 1% raise it provided to be in return for expecting 42 hours of work per week. Dkt. 108-6 at 1; dkt. 108-2 at 7 (Nguyen Dep. at 31); dkt. 108-3 at 2 (30(b)(6) Dep. at 22). But SMC has only designated evidence of its intention—not "hard evidence" that "flatly refute[s]" Ms. Downing's designated evidence of SMC's practices. *Melton*, 838 F.3d at 819 (affirming summary judgment for the employer because timecards showed that the hours at issue were compensated). SMC also argues that Ms. Downing's testimony shows that she "understood that her salary . . . was intended to cover 42 hours of work a week." Dkt. 133 at 7–8. But as explained above, she testified that she was not told that the salary and hour increases were connected. Dkt. 108-1 at 5, 6, 8–9 (Downing Dep. at 64, 68, 77, 79, 80). Indeed, SMC's memo to its employees did not describe the salary increase as payment for the extra hours expected—it addressed them as separate bullet points. Dkt. 108-6 at 1.

  This competing evidence shows a triable issue of fact on whether class members' salaries covered 40 hours in a week, as the pay stubs reflect, or 42, as SMC argues. *See Musch v. Domtar Indus., Inc.*, 587 F.3d 857, 859 (7th Cir. 2009) (The FLSA "requires employers to pay their employees a wage for all the 'work' that they do."). Those factual disputes must be resolved at trial.

8

Next, Ms. Downing argues that she's entitled to summary judgment on her claim that SMC violated the FLSA when it did not pay "for time not covered by [paid time off] for time increments less than a full day." Dkt. 123 at 20–22 (citing FLSA regulations). SMC responds that its PTO policy "was not unlawful." Dkt. 133 at 13. The only authority that Ms. Downing cites for this alleged violation is 29 C.F.R. § 541.602. Dkt. 123 at 21; dkt. 137 at 6. But that regulation applies only to "exempt" employees, while the parties agree that the class members here were "nonexempt." *See* 29 C.F.R. § 541.602(a)(1) ("[A]n exempt employee must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked."). The class members are therefore not entitled to summary judgment on this alleged violation.

The class members' motion for summary judgment on FLSA liability is therefore **DENIED**.

### 3. Liquidated Damages

"FLSA presumptively authorizes the district court to award liquidated double damages against employers who violate the FLSA." *Bankston v. State of Illinois*, 60 F.3d 1249, 1254 (7th Cir. 1995) (citing 29 U.S.C. § 216(b)). "However, the district court may choose not to award liquidated damages" if the "employer shows that it acted in good faith with reasonable grounds to believe that its actions did not violate the FLSA." *Id.* (citing 29 U.S.C. § 260). "The employer bears a substantial burden in showing that it acted reasonably and with good faith." *Id.*

The parties have filed cross-motions for summary judgment on whether liquidated damages are appropriate here for any FLSA violations. SMC argues that Ms. Downing cannot recover liquidated damages because its failure to pay the proper wage was "in good faith" and "objectively reasonable" since it sought the advice of legal counsel. Dkt. 110 at 11. Ms. Downing responds that class members are entitled to liquidated damages because SMC failed to correct FLSA violations despite having received legal advice that certain practices likely did not comply with the FLSA. Dkt. 123 at 24–27.

SMC has designated evidence that it sought the advice of outside counsel before moving to a 42-hour workweek. Dkt. 108-6 at 74–76 (emails between SMC employees and outside counsel). Counsel's response was that a 42-hour workweek would include "2 OT hours" and a 41-hour workweek would include "1 OT hour." *Id.* at 75–76. He elaborated that "the OT rate for the extra two hours would be determined on a half-time basis, rather than a time and one-half basis, because the salary is intended to cover all hours worked." *Id.* Despite that advice, SMC did not pay at least the required "half-time premium" for overtime between 40 and 42 hours in a week. *See* dkt. 133 at 2 n.1.

The Seventh Circuit addressed a similar situation in *Bankston*. 60 F.3d at 1255. The defendants there did not pay overtime even though they "had been advised by their legal staff that [the employees at issue] could not be [FLSA] exempt managerial employees." *Id.* That was enough to show "that the defendants were at least aware that the plaintiffs may have been covered by the FLSA." *Id.* The defendants then "failed to show how they took steps to be more

10

certain of plaintiffs' status" when they should have investigated further. *Id.* So they "did not . . . establish that they held a good-faith, reasonable, though inaccurate, belief that the plaintiffs were not covered by the FLSA," so liquidated damages were appropriate. *Id.*

    Similarly here, SMC's counsel informed it of its obligation to pay overtime, dkt. 108-6 at 74–76, but SMC did not follow that advice. SMC also has designated no evidence that it continued to consider its FLSA obligations for months afterward as it "struggled" with implementation and had to use manual overrides in its payroll software. Dkt. 121-31 at 15–16 (30(b)(6) Dep. at 157–58). So even if SMC believed that it was following the FLSA's mandates, *see* dkt. 108-5 at 15 (Georgen Dep. at 84), it has not shown that the belief was in "good faith" and "reasonable," or that it "took steps to be more certain of plaintiffs' status." *Bankston*, 60 F.3d at 1255. The district court cases that SMC relies on do not hold otherwise because in those cases the defendants followed the expert advice they received, leaving no factual issue about why the defendant failed to follow the FLSA. *See Durham v. Lake County, Ind.*, No. 2:13-CV-300-JEM, 2022 WL 815137, at *11 (N.D. Ind. Mar. 17, 2022); *Doden v. Plainfield Fire Protection Dist.*, No. 94 C 6249, 1995 WL 699719, at *3 (N.D. Ill. Nov. 24, 1995).

    In short, SMC, like the *Bankston* defendants, cannot shield itself from liquidated damages simply by asking outside counsel for advice. To be entitled to summary judgment, SMC would have to show that it asked outside counsel for advice *and* followed the advice. *See Bankston*, 60 F.3d at 1255. Liquidated

damages are "the norm, not the exception" and SMC has not rebutted "the strong presumption under the statute in favor of doubling." *Shea v. Galaxie Lumber & Constr. Co.*, 152 F.3d 729, 733 (7th Cir. 1998) (reversing the denial of liquidated damages).

However, the class members are also not entitled to summary judgment on liquidated damages. Liquidated damages are presumptively awarded "against employers who violate the FLSA," *Bankston*, 60 F.3d at 1254, but as explained above, the scope of SMC's FLSA liability is not yet determined. Moreover, as Ms. Downing argues, "the credibility of SMC's witnesses" must be evaluated as to "whether they were mistaken and misunderstood their counsel's advice or acted intentionally." Dkt. 123 at 28. Those determinations are relevant to whether liquidated damages are appropriate. *See Bankston*, 60 F.3d at 1255.

Because the reasonableness of SMC's conduct turns on factual questions, the cross-motions for summary judgment on liquidated damages are **DENIED**.

### B. Indiana Minimum Wage Law Claim

SMC argues that it's entitled to summary judgment on Ms. Downing's IMWL claim. Dkt. 110 at 2. Ms. Downing admits that she "is no longer pursuing a claim under the" IMWL, dkt. 127 at 8, so she has "abandoned the claim" and may no longer pursue it, *Maclin v. SBC Ameritech*, 520 F.3d 781, 788 (7th Cir. 2008).

### C. Indiana Wage Payment Statute Claim

The IWPS requires employers to pay "all wages earned to a date not more than ten (10) business days prior to the date of payment." Ind. Code § 22-2-5-1. However, "[s]alaried employees who are eligible for overtime compensation" under the FLSA are "specifically exempted." Ind. Code § 22-2-5-1.1.

SMC argues that the undisputed evidence shows that Ms. Downing was a salaried employee covered by the FLSA, so the IWPS does not apply. Dkt. 110 at 13. Ms. Downing responds that SMC should not be able to avoid IWPS liability based on the employees' salaried status "[b]ecause SMC did not pay the [Inside Sales Service] employees in accordance with the FLSA." Dkt. 123 at 28.

Both Ms. Downing and SMC testified that Ms. Downing was a salaried employee eligible for overtime under the FLSA. Dkt. 121-26 at 3, 6 (Downing Dep. at 39, 61); dkt. 108-2 at 7 (Nguyen Dep. at 33). Yet she argues that the IWPS can apply because SMC didn't follow the FLSA for Inside Sales Service employees. Dkt. 123 at 28. But the IWPS exemption isn't based on whether the *employer followed* the FLSA's overtime provisions, but on whether the *employees were covered by* the FLSA's overtime provisions. Ind. Code § 22-2-5-1.1. Since it's undisputed that Ms. Downing was eligible for overtime under the FLSA, the IWPS's exemption applies. *See id.* Finally, Ms. Downing alleges that "SMC's primary goal is to avoid a class action under the IWPS," which would not require class members to opt-in as a FLSA collective action does. Dkt. 123 at 28; *see* dkt. 56 at 3–4. She cites no evidence in support, however,

13

and does not explain why SMC's motivations affect the IWPS's clear statutory language. *See* Ind. Code § 22-2-5-1.1.

Ms. Downing was therefore "specifically exempted" from the IWPS and can recover only under the FLSA. Ind. Code § 22-2-5-1.1; *see Criswell v. Solaray Corp.*, No. 1:11-cv-1612-MJD-JMS, 2012 WL 3580055, at *2 (S.D. Ind. 2012) ("[S]alaried employees who are eligible for overtime compensation under the FLSA cannot bring a Ten Day Rule violation claim under the [Indiana] Wage Payment Statute."). SMC is entitled to summary judgment on Ms. Downing's IWPS claim.

## IV. Conclusion

SMC's motion to strike consent-to-representation forms is **DENIED**, dkt. [113], and Ms. Downing's motion to file a surreply in opposition to that motion is **GRANTED**, dkt. [131]. SMC's motion for partial summary judgment is **GRANTED** on Ms. Downing's state-law claims and otherwise **DENIED**. Dkt. [109]. Ms. Downing's motion for partial summary judgment is **DENIED**. Dkt. [119].

Because SMC is entitled to summary judgment on Ms. Downing's state-law claims, Ms. Downing's motion for class certification on those claims is **DENIED**. Dkt. [107]. Ms. Downing's motion to strike references to settlement negotiations in the class-certification briefs, dkt. [126], and SMC's motion to strike portions of Ms. Downing's reply in support of class certification, dkt. [128], are **DENIED as moot** because the motion for class certification is denied on other grounds and the Court did not consider those arguments.

The assigned magistrate judge is asked to hold a status conference to discuss settlement and trial readiness.

**SO ORDERED.**

Date: 1/5/2023

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Distribution to all electronically registered counsel.